Harry B. Frank, J.
Both defendants in Action No. 1 having, each independently of the other, consummated separate settlements with the plaintiff in that action, the instant motion for a severance and other related relief brings into question the extent to which the remainder of this consolidated action must be held to be affected by the dispositive consequences of the settlements.
The afore-mentioned codefendants in Action No. 1, Thomas C. Vincent Inc. and Central Heating & Plumbing Co., also appear as adversary parties in Action No. 2; and said Vincent, the plaintiff in the latter action, is the moving party herein. It *126 contends that the settlements in Action No. 1 covered the “ identical negligence cause of action claimed by Central Heating against Vincent ” in the second counterclaim in Action No. 2, and that by reason of this duplication the operative effects of the settlements must be extended to the cause of action pleaded in such counterclaim so as to constitute a final adjustment and compromise thereof precluding its severance and restoration to the calendar.
The essential weakness in the movant’s position is the assumption that the causes of action in both cases are identical. An examination of the specific liabilities involved indicates otherwise.
These companion actions stem from the involvement of all the parties in a particular construction project. The general contractor of the project, Arthur Venneri Company, engaged Central, under a written subcontract agreement, to perform a portion of the job, and Central in turn further sublet parts of the work to Vincent. Venneri sued both Central and Vincent, in Action No. 1, for the recovery of property damages which were sustained in the course of the performance of the subcontracted work. The action was predicated upon the provisions of the subcontract agreement between the plaintiff (Venneri) and Central, and upon general allegations of negligence against both Central and Vincent in that they “ caused or permitted ” the wrongful act and resultant damage.
Under the allegations of the complaint in Action No. 1, while both defendants might be held liable to Venneri, it would be possible, in such instance, for the liability of each defendant to be based upon a distinctly different type of misconduct. As an independent contractor having no contractual relations with Venneri, Vincent could be held responsible only if some acts of negligence on its part caused, or contributed to, the alleged damage, and consequently Vincent’s liability to Venneri, if at all, would be as an active tort-feasor. (See Garden Party House v. Sheehan Equip. Co., 10 A D 2d 902; 2A Warren’s Negligence, pp. 216-217 [Contractors, par. 1]; cf. Brooklyn Yarn Dye Co. v. Krauss, 15 Misc 2d 727.) The possible liability of the codefendant Central, on the other hand, would not similarly be limited to active negligence only, since it had assumed certain contractual obligations to Venneri relative to the performance of the subcontracted work. By virtue of these contractual undertakings, Central could be rendered liable, even though it was itself without actual fault, for damages caused solely by Vincent’s negligence, and under that vantage *127 of the complaint Central’s liability to Venneri would be founded upon passive negligence. (See Hewlett Arcade v. Five Towns Refrigeration Corp., 3 A D 2d 728; May v. 11½ East 49th St. Co., 269 App. Div. 180.)
Where the respective culpabilities of tort-feasors to a third person assumes this pattern, an additional issue of liability may come into play, that of the wrongdoers as to each other in distinction to their legal liabilities to the person directly injured. Such further liability is based upon an implied contract of indemnity which arises in favor of a passive tort-feasor who has been caused exposure to liability and the sufferance of damages by reason of the active misconduct of another. The one actively negligent is, in such case, considered the primary or principal wrongdoer and, in addition to his responsibility to the party directly harmed, he is also held to stand in the relation of an indemnitor to the one whom he has caused to be cast in damages by operation of law for his wrongdoing. (Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426; Putvin v. Buffalo Elec. Co., 5 N Y 2d 447; Tipaldi v. Riverside Mem. Chapel, 273 App. Div. 414, affd. 298 N. Y. 686.) The cause of action for indemnity is not the same as the directly injured third party’s action; it is not brought in any representative capacity on behalf of such party nor does it seek to recover that party’s damages; it is instead the assertion by the passive tortfeasor of his own right of recovery for the breach of an alleged independent duty or obligation owed to him by the active wrongdoer as indemnitor. (See Putvin v. Buffalo Elec. Co., supra; McFall v. Compagnie Maritime Belge, 304 N. Y. 314; Stafford v. Sibley, Lindsay & Curr Co., 280 App. Div. 495.)
The right to indemnity may be asserted by way of a cross claim where, as in Action No. 1 herein, the tort-feasors are sued severally by the injured party, or by an impleader of the alleged indemnitor where he is not sued as a party in the original action. (Civ. Prac. Act, §§ 264, 193-a; see Galka v. City of Albany, 285 App. Div. 27.) Such relief was, in fact, sought by Central in Action No. 1 wherein it cross-claimed against Vincent for judgment over in the event of a recovery by the plaintiff Venneri. Indemnification may also be sought, however, separate and apart from the litigation instituted by the injured third party. To that end, the passive tort-feasor may sue the active wrongdoer directly in an independent action predicated upon the indemnity claim, or he may seek to enforce such right by means of a counterclaim where he appears as the adverse party in an action instituted by the one actively *128 negligent. (See Central Hudson G. & E. Corp. v. Hatzel & Beuhler, 24 Misc. 2d 434, affd. 11 A D 2d 707; Dunn v. Uvalde Asphalt Paving Co., 175 N. Y. 214.) It is the latter possibility which precisely describes the situation prevailing in Action No. 2 of this litigation. That action was instituted by Vincent for a recovery of the balance due on its subcontract agreement with Central, and in the second affirmative defense and counterclaim interposed therein, Central seeks to recover specified damages which it alleges it was caused to suffer under its contract with Venneri solely by reason of Vincent’s negligence in the performance of the subcontracted work. The counterclaim clearly pleads an action in indemnity seeking to hold Vincent responsible for the consequences of its allegedly wrongful conduct (cf. Dunn v. Uvalde Asphalt Paving Co., supra). Where the issue of indemnity is independently projected, as in the case of the counterclaim, the factual basis relied upon by the claimant is not limited or bound by the injured third-party’s allegations relative to liability, and far greater latitude is permitted, in both pleading and proof, than where the indemnity claim is part of the litigation originated by the directly injured party. (See Central Hudson G. & E. Corp. v. Hatzel & Beuhler, supra.) In the latter case, moreover, recovery over, if warranted, may be had only as to damages payable to the injured third party, while in an independent indemnity action the right to reimbursement also covers the costs, expenses and attorneys’ fees.iiuyurred by the passive tortfeasor in the suit brought by the third party. (See O’Dowd v. American Sur. Co., 2 A D 2d 956; Bennett Corp. v. Lasker-Goldman Corp., 19 Misc 2d 926.) This procedural differential explains the relatively minor discrepancies which are apparent upon examination of Central’s cross claim in Action No. 1 and its counterclaim in Action No. 2, both of which seek indemnity. Fundamentally, however, both are essentially the same and to this extent there is a duplication in the two actions. But such duplication involves only the question of the liability as between the wrongdoers themselves, which, as has been previously noted, is not at all the same as the issues of liability raised by the plaintiff Venneri in Action No. 1.
The only settlements which were effected in this litigation were those which each of the defendants in Action No. 1 individually negotiated with the plaintiff in that action. Such settlements did no more than to release each such defendant from any claims which the plaintiff (Venneri) had or might have against it. The indemnity claim, however, did not fall into this category. That claim is not concerned with the fact that *129 Venneri could hold each defendant liable. Such fact merely provides the setting from which the indemnity claim springs, the crucial factor being the liability of the defendants as between themselves. The determination of that question is governed by the relationship between the negligent parties, their contractual or other responsibility to each other, and the resolution of the inquiry as to which of them is primarily at fault. (See Crawford v. Blitman Constr. Corp., 1 A D 2d 398.) The very basis of a recovery on the indemnity liability is the damage incurred by virtue of the legal liability which the one claiming indemnity has been caused to suffer to the directly injured party. It is not necessary for such damage to be imposed by way of judgment in order to be indemnified therefor. Such loss or damage may be voluntarily paid by the passive wrongdoer without forfeiting its right to indemnity, the voluntary settlement merely imposing certain obligations of proof with regard to the actionable facts which imposed the initial liability and the reasonableness of the amount paid. (See Dunn v. Uvalde Asphalt Paving Co., 175 N. Y. 214, supra; Williams v. Rhode Is. Corp., 281 App. Div. 618; Washington v. Morantz, 11 Misc 2d 273.) Thus, in the instant case, Central’s settlement with Venneri cannot be used by Vincent as a basis for disposing of Central’s indemnity claim. "While Vincent itself also chose to settle with Venneri, such settlement clearly could not affect the indemnity action, since Venneri was a stranger to the indemnity claim. Neither the papers submitted hereon, nor the court’s records, show that any settlement was ever intended, or entered into, with regard to the cross claim asserted by Central in Action No. 1, and it is only a settlement of that claim which would be pertinent to the counterclaim presently in issue. The fact that the demand in the counterclaim in Action No. 2 includes any recovery sought by the cross claim in Action No. 1 makes feasible a discontinuance of Action No. 1 in its entirety while still permitting a full disposition of all matters still in dispute between Vincent and Central, the parties in Action No. 2. To avoid any possible prejudice to Vincent as a result of this procedure, it will be granted leave to serve a reply as requested.
Accordingly, the motion is granted to the extent of severing Action No. 2 (Thomas C. Vincent Inc. v. Central Heating & Plumbing Co.) from the remainder of this consolidated action and directing that said action be placed upon the Day Calendar of September 6,1963, for trial, and further granting the plaintiff in said action, Thomas C. Vincent Inc., leave to serve a reply to the counterclaims of the defendant Central Heating & Plumb *130 ing Co. on or before July 15, 1963. It is further directed that Action No. 1 (Venneri v. Central and Vincent) which was settled in Part 16 on September 28, 1962, be marked discontinued in its entirety, and the motion is in all other respects denied.